# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| AMANDA DICKEY,   ) | |
|    Plaintiff   ) | |
| ) | |
| v.   ) | Civil Action No. 2:10cv00085 |
| ) | |
| MICHAEL J. ASTRUE,   ) | **REPORT AND RECOMMENDATION** |
|   Commissioner of Social Security,   ) | |
|    Defendant   ) | By: Pamela Meade Sargent |
| ) | United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Amanda Dickey, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), determining that she was not eligible for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 423, 1381 *et seq*. (West 2003 & Supp. 2011). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as

-1-

"evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Dickey protectively filed her applications for DIB and SSI on August 22, 2007,[1] alleging disability as of July 22, 2007, due to back problems, nerve damage, leg pain and fibromyalgia. (Record, ("R."), at 127-33, 150, 162.) The claims were denied initially and on reconsideration. (R. at 69-71, 77, 78-80, 82-84, 86-96.) Dickey then requested a hearing before an administrative law judge, ("ALJ"). (R. at 98.) A hearing was held on October 15, 2009, at which Dickey was represented by counsel. (R. at 33-64.)

By decision dated November 20, 2009, the ALJ denied Dickey's claims. (R. at 15-25.) The ALJ found that Dickey met the nondisability insured status requirements of the Act for DIB purposes through September 30, 2009. (R. at 17.) The ALJ also found that Dickey had not engaged in substantial gainful activity since July 22, 2007, the alleged onset date. (R. at 17.) The ALJ determined that the medical evidence established that Dickey had severe impairments, namely chronic low back pain and muscle spasms due to degenerative disc disease and disc bulge in the lumbar spine at the L4-L5 level, right hip arthralgia and fibromyalgia, but he

---

[1] Dickey filed a previous disability claim following a motor vehicle accident in 1998. (R. at 139, 199.) After the state agency initially denied that claim in 2000, Dickey did not appeal. (R. at 139.) Instead, she returned to working full-time and, soon thereafter, gave birth to her third son. (R. at 153, 274.)

-2-

found that Dickey's impairments did not meet or medically equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 17-20.) The ALJ also found that Dickey had the residual functional capacity to perform light work[2] that allowed for a sit/stand option and allowed her to be absent from work an average of one day per month. (R. at 20.) The ALJ found that Dickey was able to perform her past relevant work as a receptionist and customer service representative. (R. at 24.) Thus, the ALJ found that Dickey was not under a disability as defined under the Act and was not eligible for benefits. (R. at 25.) *See* 20 C.F.R. §§ 404.1520(f), 416.920(f) (2011).

After the ALJ issued his decision, Dickey pursued her administrative appeals, (R. at 7), but the Appeals Council denied her request for review. (R. at 1-4.) Dickey then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2011). The case is before this court on Dickey's motion for summary judgment filed May 19, 2011, and the Commissioner's motion for summary judgment filed June 15, 2011.

## II. Facts

Dickey was born in 1978, (R. at 37, 127, 131), which classifies her as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c) (2011). She has a high school education and she is college-certified as an office services specialist. (R. at 37.) Dickey alleges that she has experienced "constant" back and leg pain

---

[2] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If an individual can do light work, she also can do sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2011).

since her 1998 motor vehicle accident. (R. at 199-201, 308, 317, 320.) However, she continued to work several jobs over the subsequent 10-year period. (R. at 153, 163.) Dickey has past relevant work experience as a customer service representative, a substitute teacher, a childcare worker, a receptionist and a physical therapy assistant. (R. at 153.)

Robert Jackson, a vocational expert, was present and testified at Dickey's hearing. (R. at 59-63.) Jackson classified Dickey's past work as a customer service representative and receptionist as sedentary,[3] semiskilled work. (R. at 60.) He classified Dickey's past work as a substitute teacher and office clerk as light, semiskilled work. (R. at 60.) Jackson classified Dickey's past work as a childcare worker and physical therapy assistant as medium,[4] semiskilled work. (R. at 60.) Jackson stated that the limitations imposed on Dickey by Teresa Ellis, F.N.P., would limit Dickey to part-time work. (R. at 60, 325-29.) When asked if Dickey could perform her past work as a receptionist and office clerk should she have mild limitations as a result of anxiety and/or depression, Jackson stated that she could perform these jobs. (R. at 61.) Jackson also stated that the jobs as a receptionist and office clerk would accommodate a sit/stand option. (R. at 62.)

---

[3] Sedentary work involves lifting items weighing up to 10 pounds at a time and carrying items like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a) (2011).

[4] Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If an individual can do medium work, she also can do sedentary and light work. *See* 20 C.F.R. §§ 404.1567(c), 416.967(c) (2011).

-4-

In rendering his decision, the ALJ reviewed records from Lee Regional Medical Center; Teresa Ellis, F.N.P., a family nurse practitioner; Torry Taylor, N.P., a nurse practitioner; Dr. Deepti Kudyadi, M.D.; D. Kaye Weitzman, L.C.S.W., a licensed clinical social worker; Dr. Jim C. Brasfield, M.D.; Holston Valley Medical Center; Dr. Michael Hartman, M.D., a state agency physician; Dr. Joseph Duckwall, M.D., a state agency physician; Dr. Richard Surrusco, M.D., a state agency physician; and Howard S. Leizer, Ph.D., a state agency psychologist. Dickey's attorney also submitted medical records from Holston Valley Medical Center to the Appeals Council.[5]

The record shows that from November 2004 through July 2009, Dickey was treated at Stone Mountain Health Services for various ailments, including low back pain,[6] right hip pain, fibromyalgia,[7] acute sinusitis, cough, depression and anxiety. (R. at 221-30, 233-43, 268-338.) On October 6, 2005, Dickey reported increased nervousness and crying spells. (R. at 299.) She stated that she liked for everything to be in order and that she had a certain way of doing things. (R. at 299.) Dr. Deepti Kudyadi, M.D., diagnosed obsessive compulsive disorder with anxiety. (R. at 299.) On March 30, 2006, Dickey reported that Prozac, which was prescribed for recent premenstrual symptoms, had "significantly helped." (R. at 294.) Dickey

---

[5] Since the Appeals Council considered this evidence in reaching its decision not to grant review, (R. at 1-4), this court also should consider this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.,* 953 F.2d 93, 96 (4th Cir. 1991).

[6] Dickey reported a history of disc bulge evaluated by a Dr. McDonald, whose specialty is unknown and from whom no notes were submitted. (R. at 304.)

[7] Dickey reported that she had a history of fibromyalgia, which was well-controlled. (R. at 304.)

-5-

denied symptoms of depression. (R. at 294.) Ellis noted that Dickey declined to see a counselor, reporting that her "very mild" symptoms of obsessive compulsive disorder were not that severe. (R. at 296.) On August 31, 2006, Dickey complained of right hip pain. (R. at 227.) Ellis reported that Dickey had full range of motion in her hip. (R. at 227.) Straight leg raising tests were negative. (R. at 227.) An x-ray of Dickey's right hip was normal. (R. at 230.)

On July 5, 2007, Dickey complained of low back pain that radiated into her left leg. (R. at 225.) Ellis reported that Dickey had normal muscle strength in her lower extremities. (R. at 225.) Straight leg raising tests were negative. (R. at 225.) X-rays of Dickey's lumbar spine showed mild scoliosis. (R. at 229.) Straightening of the curvature was noted, and the disc spaces were within normal limits. (R. at 229.) On October 30, 2007, Dickey reported "lots of situational stress." (R. at 238.) She reported that she had a good response to Prozac in the past and would like to resume the medication. (R. at 238.) On March 27, 2008, Dickey reported that her fibromyalgia symptoms were worsening, which severely limited her ability to perform daily activities. (R. at 277.) She reported that she had tapered off Prozac and that she was doing well. (R. at 277.)

On May 6, 2008, D. Kaye Weitzman, L.C.S.W., a licensed clinical social worker, evaluated Dickey. (R. at 317-18.) Weitzman diagnosed a mood disorder, post-traumatic stress disorder, obsessive compulsive disorder and generalized anxiety disorder. (R. at 317-18.) She assessed Dickey's then-current Global Assessment of Functioning score, ("GAF"),[8] at 36,[9] with her highest GAF score

---

[8]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and

being 55[10] in the past. (R. at 318.)

On May 25, 2008, an MRI of Dickey's lumbar spine showed a herniated disc at the L4-L5 level with protruding disc. (R. at 265, 308.) On June 25, 2008, she stated that her depression was stable. (R. at 265.) Torry Taylor, N.P., a nurse practitioner, reported that Dickey had paravertebral tenderness along the lumbosacral spine and bilateral muscle spasms. (R. at 264.) Dickey had decreased range of motion in both legs. (R. at 264.) On April 3, 2009, Dickey reported that she was no longer taking Prozac and that she was doing fairly well without it. (R. at 335.) She reported that her pain was doing fairly well. (R. at 335.) Dickey stated that, "overall her good days outweigh her bad days." (R. at 335.) On July 22, 2009, Dickey complained of worsening fibromyalgia pain. (R. at 332.) She denied depressive symptoms. (R. at 332.) She reported being under a lot of situational stress and anxiety. (R. at 332.)

On October 7, 2009, Ellis completed a Physical Residual Functional Capacity Questionnaire indicating that, due to pain, Dickey's ability to attend to and concentrate on simple tasks would frequently be interrupted. (R. at 326.) Ellis reported that Dickey was incapable of performing even "low stress" jobs. (R. at

---

occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994).

[9]A GAF score of 31-40 indicates that the individual has "[s]ome impairment in reality testing or communication … OR major impairment in several areas, such as work or school, family relations, judgment, thinking or mood…." DSM-IV at 32.

[10]A GAF score of 51-60 indicates that the individual has "[m]oderate symptoms ... OR moderate difficulty in social, occupational, or school functioning ...." DSM-IV at 32.

326.) Ellis based these findings on diagnoses of major depression, poor coping skills and poor tolerance to minor stress. (R. at 326.) Ellis reported that Dickey could sit for less than two hours in an eight-hour workday and that she could do so for up to 15 minutes without interruption. (R. at 326-27.) She reported that Dickey could stand for less than two hours in an eight-hour workday and that she could do so for up to 10 minutes without interruption. (R. at 326-27.) Ellis reported that Dickey would need to walk every 15 minutes for up to five minutes each time. (R. at 327.) Ellis reported that Dickey would need a job that allowed her to shift positions at will and that she would need to take unscheduled breaks. (R. at 327.) She reported that Dickey could occasionally lift items weighing less than 10 pounds and rarely lift items weighing up to 10 pounds. (R. at 327.) She reported that Dickey could never twist, crouch or squat and rarely stoop and climb ladders and stairs. (R. at 328.) She reported that Dickey would miss more than four days of work per month. (R. at 328.)

On October 7, 2009, Weitzman completed a mental assessment indicating that Dickey had a seriously limited, but not precluded, ability to remember work-like procedures, to understand and remember very short and simple instructions, to maintain socially appropriate behavior, to adhere to basic standards of neatness and cleanliness and to use public transportation. (R. at 342-43.) Weitzman found that Dickey was unable to meet competitive standards or had no useful ability to function in the remaining areas. (R. at 342-43.)

On July 15, 2007, Dickey presented to the emergency room at Lee Regional Medical Center with complaints of low back pain after moving a refrigerator. (R. at 212-20.) She was diagnosed with low back pain. (R. at 218.) On July 29, 2007,

-8-

Dickey again presented to the emergency room with complaints of right hip pain. (R. at 204-11.) Dickey reported that she received a shot of Vistaril in her right hip two weeks prior, and she believed that was the cause of her pain. (R. at 207, 209.) Dickey was diagnosed with right hip pain. (R. at 208.)

On March 21, 2008, Howard S. Leizer, Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), indicating that Dickey suffered from a nonsevere anxiety-related disorder. (R. at 246-58.) Leizer found that Dickey had no limitations on her ability to perform daily living activities, to maintain social functioning and to maintain concentration, persistence or pace. (R. at 256.) He also found that she had no repeated episodes of decompensation of extended duration. (R. at 256.)

On December 27, 2008, Dickey presented to the emergency room at Holston Valley Medical Center with complaints of low back pain following a motor vehicle accident. (R. at 346-47.) X-rays of Dickey's cervical and lumbar spines were normal. (R. at 348-49.) An x-ray of Dickey's right hip also was normal. (R. at 349.) Dickey was diagnosed with lumbar pain with sciatica. (R. at 347.) On January 2, 2009, Dickey again presented to the emergency room with complaints of back pain. (R. at 352-53.) She was diagnosed with chronic low back pain. (R. at 353.)

On January 22, 2009, Dr. Jim C. Brasfield, M.D., noted that Dickey's May 2008 MRI showed a left L4 disc herniation with degenerative disc disease at the L4-L5 level with no evidence of any right L5 nerve root compression. (R. at 321.) Dr. Brasfield reported that Dickey was in no apparent distress. (R. at 321.) Her

cranial nerves and sensory function were grossly intact. (R. at 321.) Dr. Brasfield diagnosed low back pain with right lower extremity radiculopathy and degenerative disc disease. (R. at 321.) Dickey stated that her pain was not bad enough to undergo surgical intervention. (R. at 321.) Dr. Brasfield did not place any limitations on Dickey's activities.

## III. Analysis

The Commissioner uses a five-step process in evaluating SSI and DIB claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2011); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1250(a), 416.920(a) (2011).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B)

-10-

(West 2003 & Supp. 2011); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

Dickey argues that the ALJ erred by failing to find that she had a severe mental impairment. (Plaintiff's Brief In Support Of Motion For Summary Judgment, ("Plaintiff's Brief" at 8-15.) Dickey also argues that the ALJ erred by rejecting the opinion of Ellis in determining her physical residual functional capacity. (Plaintiff's Brief at 15-19.)

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays*, 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion,

-11-

even one from a treating source, based on the factors set forth at 20 C.F.R. §§ 404.1527(d), 416.927(d), if he sufficiently explains his rationale and if the record supports his findings.

Dickey argues that the ALJ erred by failing to find that she had a severe mental impairment. (Plaintiff's Brief at 8-15.) Based on my review of the record, I do not find this argument persuasive. The Social Security regulations define a "nonsevere" impairment as an impairment or combination of impairments that does not significantly limit a claimant's ability to do basic work activities. *See* 20 C.F.R. §§ 404.1521(a), 416.921(a) (2011). Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering job instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations and dealing with changes in a routine work setting. *See* 20 C.F.R. §§ 404.1521(b), 416.921(b) (2011). The Fourth Circuit held in *Evans v. Heckler*, that ""[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."" 734 F.2d 1012, 1014 (4th Cir. 1984) (quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)) (citations omitted).

The ALJ noted that the record did not establish disabling limitations from depression for a period of 12 continuous months. (R. at 17.) The ALJ also noted that there was only "minimal mention" of treatment; reports of symptoms were either mild or related to Dickey's menstrual problems or temporary situational

stress; and Dickey reported that she repeatedly stopped her antidepressant medication because she was doing well. (R. at 17-18.) The majority of Dickey's office visits showed that she was alert, oriented, had no depressive- or anxiety-related difficulties and was mentally stable. (R. at 222, 225, 235, 238, 242, 263, 265, 274, 277, 280, 283, 287, 290, 299, 302, 304-05, 316, 318.) The record shows that Dickey had no treatment other than two counseling visits and being prescribed Prozac by her nurse practitioner. (R. at 238, 294, 316-18.) Dickey reported on various occasions that Prozac helped her symptoms and that she was doing well. (R. at 238, 265, 277, 294.) "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986). In addition, the state agency psychologist opined that Dickey suffered from a nonsevere anxiety-related disorder. (R. at 246-58.)

Dickey also argues that the ALJ erred by rejecting the opinion of Ellis in determining her physical residual functional capacity. (Plaintiff's Brief at 15-19.) Based on my review of the record, I disagree. In July 2007, x-rays of Dickey's lumbar spine showed mild scoliosis. (R. at 229.) In August 2007, Dickey requested a disability statement for social services. (R. at 222.) Ellis completed a statement noting that Dickey was unable to work due to her medical condition. (R. at 223.) Dickey was treated with Skelaxin, ibuprofen and Darvocet. (R. at 238.) In May 2008, an MRI of Dickey's lumbar spine showed a herniated disc at the L4-L5 level with a protruding disc. (R. at 265, 308.) In December 2008, x-rays of Dickey's cervical and lumbar spines were normal. (R. at 348-49.) In January 2009, Dickey reported to Dr. Brasfield that her pain was not "bad enough to undergo surgical intervention." (R. at 321.) Dr. Brasfield noted that Dickey's May 2008 MRI showed a left L4 disc herniation with degenerative disc disease at the L4-L5 level

-13-

with no evidence of any right L5 nerve root compression. (R. at 321.) Her cranial nerves and sensory function were grossly intact. (R. at 321.) Dr. Brasfield diagnosed low back pain with right lower extremity radiculopathy and degenerative disc disease. (R. at 321.) Dr. Brasfield did not place any limitations on Dickey's activities. (R. at 321.) In April 2009, Dickey reported that her pain was doing fairly well and that "overall her good days outweigh her bad days." (R. at 335.) The record does not indicate that any significant or specialized treatment was ordered.

The ALJ noted that he considered the assessments of Ellis and Taylor and found that these assessments were not supported by their own treatment notes, which showed little to no medical signs and/or laboratory findings to support their conclusions. (R. at 22.) The ALJ also noted that the assessments of Ellis and Taylor were contrary to the other longitudinal objective evidence, including the evaluation from Dr. Brasfield. (R. at 22.) The ALJ also gave little weight to the opinions of the state agency physicians[11] because they were inconsistent with the substantial evidence of record. (R. at 22, 231, 244-45.) Based on the above, I find that substantial evidence exists to support the ALJ's weighing of the medical evidence in determining that Dickey had the residual functional capacity to perform light work that allowed for a sit/stand option.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now

---

[11] The state agency physicians found that Dickey did not suffer from a severe physical impairment. (R. at 231, 244-45.)

submits the following formal findings, conclusions and recommendations:

1. Substantial evidence exists to support the Commissioner's finding that Dickey did not suffer from a severe mental impairment;

2. Substantial evidence exists to support the Commissioner's physical residual functional capacity finding; and

3. Substantial evidence exists to support the Commissioner's finding that Dickey was not disabled under the Act and was not entitled to DIB or SSI benefits.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Dickey's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the Commissioner's decision denying benefits.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(C) (West 2006 & Supp. 2011):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The

judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: December 1, 2011.

s/ <i>Pamela Meade Sargent</i><br>UNITED STATES MAGISTRATE JUDGE